15 minutes to be shared by defendants. We have Ms. Erin Mercino for the plaintiff appellants. Good morning, your honors. Erin Mercino on behalf of the appellants. I have reserved three minutes of rebuttal time. When a peaceful speaker, whose message is constitutionally protected, is confronted by an unsubstantiated threat, state actors may not silence the speaker as an expedient alternative to containing or actually investigating the potentially lawless behavior. Our First Amendment jurisprudence demands preserving First Amendment freedoms, not incentivizing threats, which is precisely what the district court did here. The district court erred in its decisions for several reasons. I was thinking about this bounty problem where it was pretty clear to the officials here that there was a threat of violence, and while other things were going on at the school at the same time. And particularly in light of the recent history that we have with school shootings and the problem of terrorism and so on. I mean, there was a substantial threat or risk of a problem here, and evidently it's true that there was some kind of bounty on this guy's head or he had been threatened and it could have ended up being a violent situation. So that's what the school system had to take into account. Your Honor, there was no actual threat here, and that's contained within the complaint, and it was uttered several times by the chief of police, Rick Hoyer, and also Sergeant Boyson. There was a rumor that there was a bounty for $25 million on Kamal Saleem, who was speaking at this event. It's an unsubstantiated rumor. In fact, during the depositions, when I asked Sergeant Boyson what he did in his investigation, he spoke to Kevin Jones, who was with Kamal Saleem that day, and Kevin Jones said that it's unsubstantiated and that there's never been a problem. And didn't he say more like, well, you know, that was five years ago and it's not $25 million now? He didn't basically say that there was no bounty, did he? He said that it's an unverified rumor. And don't we have to judge this in the context of what of the actions at that time, not with the peace and calm of hindsight? I think it can be judged objectively here, and objectively, was it reasonable, when there was no evidence that there was any sort of threat that would be carried out on this day, was it reasonable to shut down a speech midway? And no, it wasn't reasonable in this instance. And I'll read for you the testimony of Sergeant Boyson, because I think that this is pretty clear, what Kevin Jones told him and what the police acted on here. So during the depositions, it was asked, who was present during your conversation with the bodyguard, just myself and him, and what happened? I told him the information that we had received, asked him if he could confirm or deny. He at that time said that this is not exact phrasing from him, that there was threats upon Kamal Saleem's life, that there was a, and I know, don't quote me on fatwa or some term that means death warrant, that his conversion from Islam to Christianity jeopardized his good standing in the Islamic community, and that he was to be killed or beheaded on sight. He did not confirm a $25 million bounty. He gave no dollar amount, but did confirm that there was threats upon Mr. Saleem's life. If we say you didn't, that you're correct on the Rule 68 offer to judgment, does that leave the rest of this moot? It does for the school district, but let me read this next part, because this is the part that is very crucial here. Did you ask him, meaning Kevin Jones, whether or not Kamal Saleem had spoken in the past? He advised me that he did. And did he say that there were no issues at any of Kamal Saleem's events in the past? He did say that. And did he say that the fatwa would be carried out on the 26th of January? He did not. Was there any evidence that it would be carried out on the 26th of January? Was there a fatwa against him? The fatwa is this rumor of the $25 million bounty. And there was no fatwa. Was there any evidence that it would be carried out on the 26th of January? No. So the police acted on no evidence that anything would happen at this event, and nothing had happened previously. A Muslim imam had issued a fatwa, is that it? It's unverified whether or not there is a fatwa. But what the standard is that the district court has created is that anyone who converts from Islam to Christianity then would not be able to speak because if a fatwa is then put on someone's head, then that person has a death threat against them. And forever, even if there's no evidence at the next event, they would not be allowed to speak because of this potential death threat, even though there's no evidence that it would be carried out. Weren't there several children's matters going on in the high school at the same time? There's, albeit it hadn't been verified right away, but there was this rumor of somebody going to kill this man. Doesn't the police have some obligation to make sure everybody's safe? The police have the obligation to protect the First Amendment freedoms of a peaceful speaker and of peaceful event-goers and the peaceful people who are putting on the event. This event took place after school hours. This wasn't something that happened. So if this guy got blown up and all these children were killed, would the parents of those children have a cause of action? Quite frankly, there was no threat at all that there would be any sort of bomb at the school. There was no credible threat at all to this event. That's not as hypothetical. So could you respond specifically to the hypothetical Judge Saunders posed? Well, here, this happened when the event was shut down. It was after 7.50 p.m. at night. So I think that the other events going on at the school have been, I would say, kind of expanded in terms of whether or not these events were actually going on and how many people were at the school. It was 7.50 p.m. at night. We know that one of the events, the swimming practice, had already ended, and the police actually didn't go into the gymnasium or the wrestling room, and they didn't go into the wrestling room until after everything occurred, if you were to believe. If there had been a letter written to this man or to people at the school, the police or school officials, that we're going to bomb you if you let this guy speak, that would alter your opinion. It's the fact that you don't have something in writing or something other than what you're referring to as a rumor that makes the difference. Certainly, if there's a bomb threat, an actual bomb threat, then that's very different, and the school district has policies for how to handle actual bomb threats to make sure that everyone is safe. Here, there was absolutely no evidence. There was no direct threat at all. Instead, this gentleman, Kamal Saleem, has been speaking all over the country and has never had any sort of issue. Where did the rumor come from, exactly? It came from a person who was at the event. But it was common knowledge that Mr. Saleem had been a, I think it was described as, he had previously been a terrorist, correct? Wasn't that the description? That's correct. And the school had information about his history and the content of his speech. At the time, they approved the use of the facility for that purpose, correct?  They knew that the event would be something that would be open to the public. They knew the general theme of the event, but they did not ask for a list of speakers for who would be at the event. So the school routinely will rent spaces to private groups after hours. And how long had Mr. Saleem been engaged in his speech before the event was shut down? He was engaged in his speech for approximately 20 minutes, and there had been no threats. There had been no suspicious activity from anyone in the crowd, anyone at the event. There had been nothing that had triggered this other than the knowledge that there was this rumor. Okay. And so you say there was an infringement of his right. You challenged the dismissal of the motion. I want you to speak to that a little bit and then get back to what Judge Nahomish raised about the Rule 68 offer. Yes, Your Honor. So in terms of the 12B6 motion, the court applied the wrong standard. The court did not accept all of the plaintiff's factual accusations or allegations as true in the complaint. Instead, the court disregarded all of the allegations that spoke to the fact that there was no threat to this event and that it didn't meet the constitutional standard, and it certainly doesn't meet this court's constitutional standard from the en banc decision in Bible Believers that the police must first do their due diligence. The district court was acting upon what type of motion exactly? So the district court bifurcated the case, and with the city of Allegan and the chief of police, they allowed them to file a 12B6 motion to dismiss. With the school district and the school district defendants, they instead did not allow a 12B6 motion but engaged in a limited amount of discovery, and then there were summary judgment motions, and the district court granted summary judgment in favor of the school district. And you're contesting the 12B6 case? The 12B6 and? That the district court did not accredit all of the allegations in the complaint when it dismissed the complaint. That's correct, and its decision is in error as a matter of law. And then the plaintiffs are also challenging the decision on the summary judgment motion against the school district, and Your Honor is correct in saying that that would be finished if this court were to rule on the Rule 68 aspect of that case. So there was an offer to settle the case or compromise for $500, and I know this is something to ask the other side because they are alleging that all of a sudden you guys changed the terms and conditions and that constituted a counteroffer and then it was withdrawn. So you want to talk about the offer of judgment a little bit and why you believe that you all validly accepted the offer, even with the distribution language included in the offer? Sure, Your Honor. In terms of the offer, the offer was made. There was acceptance within the 14 days, which is pursuant to the language of Rule 68. It was an acceptance in full. At the end of the acceptance in full, there was language requesting for the distribution of the $500 to the different plaintiffs. It was simply clarification. It did nothing to change the acceptance. It didn't add any terms, just a distribution request? No, it was a request. It was not a counteroffer. The language of the acceptance itself says that we accept your offer in full. Questions? Judge Merrick? No, I don't believe so. Mr. Howard? No. Thank you. You have your report. Thank you. Thank you. Counsel? Thank you. Thank you, Your Honor. It's Tom Maher for the City of Allegan and for its Police Chief, Richard Hoyer. We've agreed to split our time in half. Your Honor, I think that I heard a question that made me think that there are two aspects to this case from my point of view. There's the lawyer's aspect about what would be the exposure to the school, to the city, if something did go wrong. And then there's the human aspect of if you're Police Chief Hoyer and you have heard from the bodyguard that there have been death threats, which is an allegation in the complaint. And if you have heard that there's a $25 million bounty on this speaker's head, which is also an allegation in the complaint. And if the bodyguard has said, well, I can't say that that rumor is false, but I can't really put a number on it, which is an allegation in the complaint. You as the Police Chief . . . that was dismissed under 12B6. What's your response to that? I disagree. Without knowing every single allegation of the complaint that the judge may have referred to, here's what she did rely on and here's what specifically is in the complaint. She relied, did Judge Neff, on the fact that the bodyguard said there have been death threats on this individual. That's a true statement from the complaint. She relied on the fact that there had been a claim by a woman that there's a $25 million bounty on this person's head. That's an allegation in the complaint. And she relied on the fact that the bodyguard, Kevin Jones, did not say false. There has been no bounty. He said, yeah, it's a rumor. I don't know what the amount is. That's an allegation in the complaint. I think those are the principal allegations that the judge did rely on in reaching her conclusion. If counsel is saying there are other allegations that Judge Neff relied on that were not correct, that's not, I don't think that was the focus of her decision, nor do I think it's the focus of my argument because I think the judge was right to focus on what she did. How does the Bible Believers case from this circuit affect your position? I don't think it, put it this way, it's such a different case that it doesn't have any impact on Judge Neff's 12B6 ruling, in my opinion. There is no, well, it's a public forum without question. It's not a non-public forum like a high school. It's not a circumstance where the... So your position is the high school is a non-public forum? The high school, in my mind, is a non-public forum. What about those arguments that, well, the high school is open to anybody who fills out an application so long as they pay the fee and there's no conflicting event and so it's pretty public? Well, I think you hit it with the so long as. If it were truly a designated public forum, then it would be open for indiscriminate use by anyone who came. But it's not. At most it would be, in my mind, a limited public forum where he said, for this purpose on this night for what you've told me is this free speech event, for 90 bucks you can rent the room. Had you told me, for example, that the man had had a bounty put on his head or had you told me that there had been death threats, maybe a better night would have been when these other two events were not going on at the school. Or maybe in that event we could have had people to screen the people who were coming in the door. Well, I don't quite understand this public forum problem in the case. This is a public forum right here, I guess. This is a public institution. Yet we've got a lot of rules about what you can say and what you can't say. So those rules have to be molded for the purpose of the place. I don't know exactly what the public forum category really implies in a case like this. The designation of the forum will decide what the standard of review is to be. If there were a public forum, which there was not, it would be strict scrutiny. In a non-public forum or a limited one. We have strict scrutiny right here in this public forum? Pardon me, sir? We have strict scrutiny right here in this public forum? This is clearly a public forum. And if someone interfered with constitutional First Amendment rights, they would have to justify that with a compelling state interest that's strictly served by the means. Because this is a public forum. Where the school is a non-public forum or at most a limited public forum, it's a different standard of review. There was a compelling interest in any event, the safety. And the means that were chosen, which is to end the event. But if there was not an active, actual threat, does that exception that you argue hold? There was no threat. Somebody just said, oh, he's got a bounty on his head, a $25 million bounty on his head. The speech has been going on for 20 years. And then even after they disrupted the speech, there was no getting people out of the building. There was no evacuation. People just kind of stayed and did whatever. I don't think that by any means all the decision making, especially after, is what ideally one would want it to be. But to go to the first point, we know there was a death threat because the bodyguard said so. Even if we could not verify that at that time, in the next 20 minutes, in the next half hour. And verified subsequently? If subsequently rolls around, which is a cavalier way of saying, if something happens then and we ignored that threat. We can't have a First Amendment speech or freedom of religion or whatever you want to say here that is just based on rumor. There's got to be something more than that in order to cut off speech of this kind. And this is pretty close in situation here unless there's some substance. Because obviously if there is real substance to quote the rumor that this person may be attacked right there, then that's a completely different problem. So it's important how much justification there is for the rumor, right? I agree. And here's an allegation. Let me just add on to Judge Meritz. So in responding to Judge Meritz, I want you to focus on the fact that you said the bounty on his head, the death threat, that's the problem. And so we stopped the proceeding in mid-speech. But we're concerned about somebody coming and trying to execute the fatwa there. But you don't require him to leave the building and you don't require other people to leave the building. So the threat really is not abated because he's still on property and other people are still on property. I think the question becomes there, Judge, is having made the choice to end the free speech event, which of course is what's at issue here, and then not acting better, more appropriately, after the fact, does that then say to the school, to the chief, to the city, you had no right to stop the event in the first place? Here's, Judge, when you were talking about the bounty, here's the allegation. Is there a question of fact, though, as to that? If we were focusing only on... If the chief of police comes in and says, I've got to stop this because we're fearful the building would blow up and endanger other people, and then he does nothing further, would that be a question of fact as to whether he acted appropriately or not? I don't think it would get past a 12b-6. I don't think it's sufficient to state the claim. Not when you have an allegation in the complaint that says, paragraph 124 of the complaint, Kevin Jones, the bodyguard, further stated that there had been death threats directed toward Kamal Saleem from Islamic extremists in the past. The bodyguard, Kevin Jones, at the event, talking to the police by their complaint allegation, he stated there had been death threats directed at Kamal Saleem, the speaker, from Islamic extremists in the past. This is something he has said to the police. If you are a police chief in that circumstance, you have to just... Is this all the police knew at the time they terminated the event? This was the basis of it and all they knew? This and the bounty. Well, the bounty is part of the rumor, right? Well, there's the rumor of the bounty, sir, and then there's the bodyguard saying... Where did the rumor of the bounty come from? The police were approached by a woman who said there's a $25 million bounty. They went then to the bodyguard, and why the man has a bodyguard was new to the police, but they went to the bodyguard and said, what's this about? A few sources of information. Yes. And I'm not sure if I've answered the questions, Your Honor. Thank you. You're welcome. Good morning. I'm Mark Ostrowski on behalf of Allegan Public Schools and Jim Mallard, the high school principal. I'd like to focus on the legal arguments, first of all. There is no basis for finding the school liable here. They have not alleged individual liability against Mr. Mallard. They've only alleged official capacity. And there is no policy or procedure of the school that violated any of their rights. This was an isolated incident. This school is a small school in a rural area. Previously, it's provided access to its event room to youth sports groups, youth theater groups, those types of things. There's never been any controversy where they had to balance safety with the rights of a speaker, their free speech rights. So this is an isolated event. You're saying that they had the same rights as any private individual who owns a building to not allow or to terminate something that's going on in the building. Is that what your argument is? Not quite. Because they are a public body, if they're going to give access to a certain type of group, then they can't limit their access based on, for example, the content of their speech and that type of thing. So they don't quite have the same rights as a private group. However— Because of this public forum problem? Well, Your Honor, first of all, the high school is a non-public forum. And there are limitations on who they would allow to use these rooms. They require an application. They require you pay a fee. And they look at whether there are conflicts or not. If plaintiffs had told the school about Mr. Saleem's background and the fact that he claims that there's a bounty on his head— in fact, that's where the rumor comes from is Mr. Saleem wrote a book called Blood of Lambs where he claims he has a bounty on his head. He claims there's been assassination attempts. But it had been written before the scheduled event, right? It was written before then, yes. But— I keep learning things. He had written this himself in a book? Yes, and if you— They've got a bounty on my head? Yes, that there's a fatwa against him. But if you look at my brief, I cited an email sent by Willis Sage. Willis Sage is one of the plaintiffs. He's the one who did the footwork to arrange this. He sent an email on January 4th, about three weeks before this event, trying to promote it to the people they wanted to attend. And in that email, he said that Kamal Saleem speaks around the country despite the fact there's a price on his head. So he's saying there's a bounty. But more importantly, getting back to the forum analysis, the school does limit who can use their facilities, and they would have found there was a conflict here had they known that there was a bounty on this gentleman's head, that there was an issue of a fatwa. They didn't—they never—plaintiffs never told the school they were going to have an ex-terrorist here who may have a bounty on his head. There's a fatwa issue. They didn't explain any of that to them. All they told the school was that they were going to have an event promoting a curriculum in schools where the Constitution would be taught and promoted. The school had no information. I understand that you said they didn't have that information. I want to go quickly because I know your time is fleeting. I want to go to the offer. Did Mr. Vogelsang, who made the offer, have the authority of the school board to communicate that offer? And the reason I ask that is because it seems like there are inconsistent positions put forth. On one point, the offer was made, and then fairly shortly thereafter, Mr. Vogelsang says, my clients are reconsidering the offer, and then later on they say, my client, the school board, never knew about the offer. So just straighten that out for us. Sure. Mr. Vogelsang did not have authority from the school district to make the offer. He didn't ask them or explain to them the implications before he did that. He said he was getting ready for a trial. He wanted to try and do something to bring this case to a head. Just your statement left a little ambiguity to me. Sure. He didn't tell them the consequences. Did he tell them that we should make an offer of about $500? I'll make it crystal clear. Mr. Vogelsang never talked to the school at all about making an offer before he made the offer of judgment. He assumed the offer would be rejected, number one. But number two, he also assumed for $500 the school would be glad to get rid of the case. So it was an error on Mr. Vogelsang's part that he freely admits now. But he did not discuss making an offer with the school before he did it. After he did it, he realized that he shouldn't have done that, and then he contacted Plaintiff's Counsel, asked her to wait until he could speak to the school and confirm that they wanted to make the offer. His statement was not truthful then when he said, my clients are having second thoughts about the offer. That's true. It was not entirely truthful. I think he was embarrassed to tell Plaintiff's Counsel that he hadn't spoken to his clients. That offer was in settlement of this first case that we've been talking about. Is that what it was? I mean, the threat was to sue the various and sundry people for the reasons that Counsel for the Plaintiffs has outlined here to us, constitutional reasons. And this set of offers or acceptances, whatever we want to decide it is, is to settle that case, right? To settle all claims against the school district. All claims. And all the personnel. Yes. So if we say, yes, there was an offer and there was an acceptance, then that will settle the first problem, the case that we had argued. Do you follow what I mean? It would resolve the case against the school district and Mr. Mallard, who he's the only school personnel left. Yes, it would resolve that. But not against the police. Correct. That's the context here? Yes, that's correct. And again, the school objects to there being a judgment against them because they don't feel like they did anything wrong. And one other point about the form analysis. There would have been a conflict had the school known the full details. They would not have allowed the speaking event to take place at the same time a girls' basketball game was going on. There were swim practice. There were hundreds of people at the school. They would not have allowed it on that night. They may not have allowed it at all. Isn't the obligation on the school board to do due diligence to find out what kind of events they're sanctioning on school property? I'm sure they will now, but they never had any sort of situation like that before. Whether they've done it before or not, it's their obligation, since they're bringing outside people onto school property to do their due diligence and find out who's being brought on. Well, there's some obligation on both sides, and I think it was deceptive of plaintiffs to say that this was just an event to talk about the Constitution and the curriculum. They certainly didn't engage in full disclosure with the school district. Sure, the district probably should have asked some questions, but I think it was really deceptive on plaintiffs' part. Go ahead. I'm troubled by this question. Why is this little school out in the country where, as you say, why do they have any obligation to let anybody come in there, and why do they not have discretion like any landowner would have or building owner would have? The fact that it's a school, a public institution, is that the reason? And if so, what is the policy behind that, and where does that policy come from in terms of the case law that we are to apply? Because it seems to me there's an open question about how much discretion the school has as to who it allows to come in and how long they allow them to be there. Your Honor, I do believe the school had complete discretion to entirely say we're not going to allow this event at all. It would have been content neutral. That's something they could have done. They didn't do that, and they allowed the event to start, but this is a nonpublic forum. There's a case law that says they've got discretion, but if they allow an event to start, they can't stop it? No, no, and that's not what I'm saying. I think they did have the authority to stop it, as long as it's content neutral. If you allow an event to start, you can't stop it because you disagree with what's being said. However, they did have discretion to disallow it entirely. I'm having trouble remembering the name of the case. Where does it come from that if someone got up and said something in the school that you don't like, you can't ask them to leave? Where does that come from? The idea that they couldn't exercise their discretion based upon their view of the content of the speech, where does it come from that they do not have the authority under what case law? Content neutrality doesn't apply to everything. Sure. Well, that's like your question about this being a public forum. Actually, I don't think it is. It's not a traditional public forum. It's a limited public forum where you're allowed to express your opinions, but only in certain areas and in certain ways. You wouldn't allow anyone to come through those doors and start making a political presentation. You're not going to allow people to come in here and campaign for Bernie Sanders in the middle of argument. So it's a limited public forum. It's not an open public forum. I can't answer your question, Your Honor. I don't know the case law off the top of my head regarding that issue. Anything else? Thank you, sir. Thank you. You can answer that question. Yes, Your Honor. I don't quite understand why this little school doesn't have discretion as to what speech it's willing to listen to or not. Your Honor, the Supreme Court answered that very question in Rosenberger, and if a school district opens up a designated public forum as it did here, then it has to abide by the rules of that forum. I don't think they agree that they opened up a public forum. Well, they did. Their policy was to have the person requesting to have an event at the school fill out a form. They filled out that form in its entirety. They filled out the purpose of the event. The purpose of the event was to talk about the Constitution, and the Constitution, according to Kamal Saleem, conflicts with Sharia law. So he was talking about the differences between Sharia law and the Constitution. So that is why he was part of the event. It was something that was titled, Constituting Michigan, Our Constitution's Principles. So it was very much on point. There was no deception there. But in this case, and the name of the case again is what? Rosenberger. It says that a small school system, small school house like this, it doesn't have the discretion. It doesn't say small school. It says university. But whatever size of the university, whatever the size of the public institution, the rule remains the same. If the school decides to open up a designated public forum, it must abide by the rules of that forum, and here it did. It allowed for private groups to rent out space. This is a public forum, and that has got a set of definitions, I take it. What is a public forum and what is not, even though I would say this is a public forum, obviously you can't say anything you want to here. Your Honor. That's my problem. So the designated public forum certainly has rules and restrictions, and I can definitely go into that. However, here, because this is a ratification of a heckler's veto, because it's a ratification of a death threat that actually posed no threat to this event, then strict scrutiny applies immediately no matter what. Maybe that you had an obligation since your client wrote that he was under threat to have disclosed this. Your Honor, the people who were planning this event answered every single question of the school district. They met with the school district. They completed all of the forms, and they were granted. But they didn't tell them at that time that he has a threat. What they did is 10 days prior to the event, they arranged security with the police, as they have in the past, to hold private events at Allegan High School. And so they went to the police 10 days prior. Pardon? Was it for the protection of the speaker? Yes, they're asking for two police officers to be present at the event. They've held an event previously like this with the police presence. Because he had a threat on his, a threat? Yes. He said, we're going to have Kamal Saleem as a speaker. You'll want to Google him. Here's his name. And then two days prior to the event taking place, the school district and the police department received a letter requesting that Kamal Saleem not speak at the school and that he be forever banned from the school. So they definitely had warning that Kamal Saleem was speaking at this event. There was nothing untoward. There was nothing deceptive in the planning. But, again, the forum analysis here, while it definitely is a designated public forum, it's not dispositive because this is a viewpoint-based silencing of Kamal Saleem's speech. It's a hard problem because, you know, universities frequently withdraw the invitation for a speaker to deliver a speech at the university or the commencement address or whatever because it becomes very controversial. And every time they do, it's controversial because what the speaker says in part, all of these withdrawals are illegal under the First Amendment? Well, it depends if it's a public or private university. I suspect many of those withdrawals are probably from private universities. But if it is a public university and they have opened the forum to a variety of different speakers, then they must abide by the rules. They choose the ones they like and the ones they don't like. Exactly. Nobody would do that. I mean, they're not going to choose somebody they don't want to hear. They think they want to hear this person, but then it becomes controversial, and so they withdraw the invitation. And you're saying, by analogy to your case, that that's illegal. Exactly. A person's identity or a person's message cannot be silenced based upon viewpoint, and it also can't be silenced based upon past death threats where there's actually no threat at all and no evidence at all to substantiate any sort of threat to this event. Okay. Judge Tomlinson, did you have another question? No. Thank you very much. You're out of time. Your Honor, thank you. If I may, just very briefly, thank goodness that this is the rule, because can you imagine how many speakers in history would have been silenced because there had been past death threats? Thank you very much. We're trying to silence the speaker here. Thank you. I will respect your silencing. Thank you. Thank you. The matter is submitted.